11-980-cv
Washington v. Gonyea

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

August Term 2012

(Argued: June 21, 2013          Decided: September 10, 2013)

No. 11-980-cv

_____

ANTHONY WASHINGTON,
*Plaintiff-Appellant,*

-v.-

PAUL GONYEA, Deputy Superintendent of Monterey Correctional Facility, Individually and in his Official Capacity, TAMMI CHABOTY, Sergeant at Woodbourne Correctional Facility, Individually and in her Official Capacity, KEITH GRANGER, Sergeant at Livingston Correctional Facility, Individually and in his Official Capacity,
*Defendants-Appellee*s.

_____

Before:   LIVINGSTON and CHIN, *Circuit Judges*, and RAMOS, *District Judge.*[*]

Appeal from the judgment of the United States District Court for the Southern District of New York (Gardephe, *J.*), entered January 31, 2011, dismissing Plaintiff-Appellant's claim alleging that defendants substantially burdened his right to free exercise of religion in violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1.  For the reasons discussed below, we hold that section 3 of RLUIPA does not provide a private right of action against state officials acting in their individual capacities. We AFFIRM the judgment of the district court as to the RLUIPA claim.

> MICHAEL J. BALCH, New York, NY, *for Plaintiff-Appellant.*

_____

[*] The Honorable Edgardo Ramos, of the United States District Court for the Southern District of New York, sitting by designation.

BRIAN A. SUTHERLAND, Assistant Solicitor General of Counsel (BARBARA D. UNDERWOOD, Solicitor General, MICHAEL S. BELOHLAVEK, Senior Counsel, *on the brief*), *for* ERIC T. SCHNEIDERMAN, Attorney General of the State of New York, New York, NY, *for Defendants-Appellees.*

PER CURIAM:

Plaintiff-Appellant Anthony Washington ("Washington") appeals from a judgment of the United States District Court for the Southern District of New York (Gardephe, *J.*) , entered January 31, 2011, dismissing his *pro se* complaint alleging that New York state prison officials Paul Gonyea ("Gonyea"), Tammi Chaboty ("Chaboty"), and Keith Granger ("Granger") substantially burdened his First Amendment right to free exercise of religion in violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1, and infringed his due process and First Amendment rights in violation of 42 U.S.C. § 1983 ("§ 1983"). In an accompanying summary order filed today, we affirm in part and reverse in part the district court's rulings on Washington's § 1983 claims. For the reasons stated below, we conclude that Washington's RLUIPA claim must fail because RLUIPA does not authorize monetary damages against state officers in their official capacities, *see Sossamon v. Texas*, 131 S. Ct. 1651 (2011), and does not create a private right of action against state officers in their individual capacities.[1] We therefore affirm the judgment of the district court dismissing Washington's RLUIPA claim.

[1] Since Washington is no longer in the Special Housing Unit, we dismiss his RLUIPA claim for injunctive and declaratory relief as moot. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006); *Muhammad v. City of N.Y. Dep't of Corr.*, 126 F.3d 119, 122-23 (2d Cir. 1997).

2

This appeal arises from an incident and subsequent disciplinary proceedings at the Woodbourne Correctional Facility, where Washington was an inmate. As relevant here, Defendants-Appellees Chaboty and Granger, corrections officers at Woodbourne, instigated a disciplinary proceeding against Washington, a Muslim, after an interaction on August 6, 2006 in which Washington gave Chaboty a Quran. Following a disciplinary hearing at which Defendant-Appellee Gonyea presided, Washington was found guilty of "harassment" and making "comments of a personal nature to employees," in violation of 7 N.Y.C.R.R. § 270.2(B)(8)(ii). Gonyea imposed a penalty of 65 days' special housing confinement and loss of "rec[reation], packages, commissary, phones, and special events." The New York Appellate Division, Third Department ultimately annulled the disciplinary disposition in an Article 78 proceeding on the basis that the disposition was not supported by substantial evidence and that Washington's conduct was only "a continuation of a cordial relationship between the officer and petitioner." *Washington v. Selsky*, 48 A.D.3d 864, 865 (3d Dep't 2008).

Washington commenced this *pro se* suit in the United States District Court for the Southern District of New York on November 5, 2009, alleging that Defendants-Appellees unconstitutionally retaliated against him for exercising his First Amendment rights to free exercise of religion and free speech and denied him due process in violation of § 1983, and that Defendants-Appellees substantially burdened his free exercise rights in violation of RLUIPA. Defendants each moved to dismiss the

complaint. As relevant here, the district court dismissed Washington's RLUIPA claims on the ground that Washington had not adequately pled that the Defendants-Appellees had placed "a substantial burden---or, indeed, *any* burden---on his religious practice." *See Washington v. Chaboty*, No. 09 Civ. 9199, 2011 WL 102714, at \*9 (S.D.N.Y. Jan. 10, 2011). Washington subsequently filed this timely appeal.

## DISCUSSION

Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise [of an institutionalized person]," 42 U.S.C. § 2000cc-1(a), "in a program or activity that receives Federal financial assistance," *id.* § 2000cc-1(b)(1), or in a way that affects or would affect "commerce with foreign nations, among the several States, or with Indian tribes," *id.* § 2000cc-1(b)(2). RLUIPA creates an express private cause of action allowing individuals to "obtain appropriate relief against a government." *Id.* § 2000cc-2(a); *see Sossamon v. Texas*, 131 S. Ct. at 1656. The term "government" includes, *inter alia*, "a State, county, municipality, or other governmental entity created under the authority of a State," "any branch, department, agency, instrumentality, or official" thereof, and "any other person acting under color of State law[.]" 42 U.S.C. § 2000cc-5(4)(A).

In *Sossamon v. Texas*, the Supreme Court held that sovereign immunity forecloses the availability of money damages as a remedy against states and state actors in their official capacities under RLUIPA. 131 S. Ct. at 1663 ("States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and

4

unequivocally includes such a waiver.").   Washington therefore cannot sustain his RLUIPA claim against Defendants-Appellees in their official capacities.

Washington has also sued Defendants-Appellees in their individual capacities. While *Sossamon* did not decide whether RLUIPA allows individual-capacity suits against state officials, every circuit to have addressed the issue has held that it does not.  *See Nelson v. Miller*, 570 F.3d 868, 886-89 (7th Cir. 2009);  *Rendelman v. Rouse*, 569 F.3d 182, 188-89 (4th Cir. 2009); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 328-29 (5th Cir. 2009), *aff'd on other grounds by* 131 S. Ct. 1651 (2011); *Smith v. Allen*, 502 F.3d 1255, 1271-75 (11th Cir. 2007), *abrogated on other grounds by Sossamon*, 131 S. Ct. 1651.

We adopt the reasoning of our sister circuits in concluding that RLUIPA does not provide a cause of action against state officials in their individual capacities because the legislation was enacted pursuant to Congress' spending power, *see* 42 U.S.C. § 2000cc-1(b)(1), which allows the imposition of conditions, such as individual liability, only on those parties actually receiving the state funds.  *See, e.g., Smith*, 502 F.3d at 1272-75 ("[I]t is clear that the 'contracting party' in the RLUIPA context is the state prison institution that receives federal funds; put another way, these institutions are the 'grant recipients' that agree to be amenable to suit as a condition to receiving funds—but their individual employees are not 'recipients' of federal funding.");[2]  *cf.*

---

[2] As we have previously observed, "Spending clause legislation is 'much in the nature of a contract,' and [] its 'contractual nature has implications for our construction of the scope of available remedies.'" *Henrietta D. v. Bloomberg*, 331 F.3d 261,285 (2d Cir. 2003) (quoting *Barnes v. Gorman*, 536 U.S. 181, 186-87 (2002)).

*Davis ex rel LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 640-41 (1999) (holding that for Title IX, "enacted pursuant to Congress' authority under the Spending Clause," "[t]he Government's enforcement power may only be exercised against the funding recipient"). Indeed, "[t]o decide otherwise would create liability on the basis of a law never *enacted* by a sovereign with the power to affect the individual rights at issue"—*i.e.*, the state receiving the federal funds, *Sossamon*, 560 F.3d at 329—and this would "raise serious questions regarding whether Congress had exceeded its authority under the Spending Clause," *Nelson*, 570 F.3d at 889. *Cf. Rendelman*, 569 F.3d at 189 (explaining that even if Congress could condition acceptance of federal funds on a state subjecting its officials to individual liability, "Congress did not signal with sufficient clarity [an] intent" to do so under RLUIPA). Accordingly, as a matter of statutory interpretation and following the principle of constitutional avoidance, we hold that RLUIPA does not create a private right of action against state officials in their individual capacities. We affirm dismissal of Washington's RLUIPA claim on this ground.

We note that Congress invoked its power to regulate interstate and foreign commerce as an alternative basis for enforcing section 3 of RLUIPA. *See* 42 U.S.C. § 2000cc-1(b) ("This section applies in any case in which . . . (2) the substantial burden affects . . . commerce with foreign nations, among the several states, or with Indian tribes."); *Nelson*, 570 F.3d at 886; *Rendelman*, 569 F.3d at 189. Here, however, Washington has pled no facts indicating that the restriction of his religious rights had any effect on interstate or foreign commerce. The commerce clause basis for RLUIPA

6

is therefore not properly before the Court, and we decline to decide whether RLUIPA authorizes individual-capacity suits under the imprimatur of the commerce clause.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the judgment of the district court in dismissing Washington's RLUIPA claim.