13-981-L
Turkmen v. Hasty

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of December, two thousand fifteen.

PRESENT: DENNIS JACOBS,
JOSÉ A. CABRANES,
ROSEMARY S. POOLER,
REENA RAGGI,
RICHARD C. WESLEY,
PETER W. HALL,
DEBRA ANN LIVINGSTON,
GERARD E. LYNCH,
DENNY CHIN,
RAYMOND J. LOHIER, JR.,
SUSAN L. CARNEY,
CHRISTOPHER F. DRONEY,
<u>Circuit Judges</u>.[1]

- - - - - - - - - - - - - - - - - - - - - - - -X

IBRAHIM TURKMEN, AKHIL SACHDEVA, AHMER IQBAL ABBASI, ANSER MEHMOOD, BENAMAR BENATTA, AHMED KHALIFA, SAEED HAMMOUDA, PURNA BAJRACHARYA, on behalf of themselves and all others similarly situated,

| | |
|---|---|
| <u>Plaintiffs-Appellees-Cross-Appellants</u>, | 13-981 (L)<br>13-999 (Con)<br>13-1002 (Con) |
| – v.– | 13-1003 (Con)<br>13-1662 (XAP) |

---

[1]    Robert A. Katzmann, <u>Chief Judge</u>, took no part in the consideration or decision of this case.

DENNIS HASTY, former Warden of the Metropolitan Detention Center, MICHAEL ZENK, former Warden of the Metropolitan Detention Center, JAMES SHERMAN, former Metropolitan Detention Center Associate Warden for Custody,

Defendants-Appellants,

JOHN ASHCROFT, former Attorney General of the United States, ROBERT MUELLER, former Director, Federal Bureau of Investigation, JAMES W. ZIGLAR, former Commissioner, Immigration and Naturalization Service,

Defendants-Cross-Appellees,

SALVATORE LOPRESTI, former Metropolitan Detention Center Captain, JOSEPH CUCITI, former Metropolitan Detention Center Lieutenant,

Defendants.

- - - - - - - - - - - - - - - - - - - -X

**ORDER**

Following disposition of this appeal, an active judge of the Court requested a poll on whether to rehear the case en banc. A poll having been conducted and there being no majority favoring en banc review, rehearing en banc is hereby **DENIED**.

Rosemary S. Pooler and Richard C. Wesley, Circuit Judges, concur by opinion in the denial of rehearing en banc.

2

Dennis Jacobs, José A. Cabranes, Reena Raggi, Peter W. Hall, Debra Ann Livingston, and Christopher F. Droney, Circuit Judges, dissent by opinion from the denial of rehearing en banc.

                              FOR THE COURT:
                              CATHERINE O'HAGAN WOLFE, CLERK

ROSEMARY S. POOLER and RICHARD C. WESLEY, Circuit Judges, concurring in the denial of rehearing *en banc*:

Our dissenting colleagues lament that the majority opinion in this matter presents the first circuit decision in the country allowing a *Bivens* claim for an "executive policy" enacted in response to a national emergency. We disagree. The majority opinion acknowledges that *Iqbal* confirmed that it was constitutionally permissible for the Attorney General to subject detainees with suspected ties to terrorism to restrictive conditions of confinement. The majority opinion is unanimous in concluding that plaintiffs have no claim in that regard.

Our differences arise from the significance of what we conclude is a plausibly pled allegation that the Attorney General ratified the rogue acts of a number of field agents in carrying out his lawful policy. The Attorney General is alleged to have endorsed the restrictive detention of a number of men who were Arabs or Muslims or both—or those who appeared to fit those categories—that resulted from the fear and frenzy in greater New York following the 9/11 attacks in which suspicion was founded merely upon one's faith, one's appearance, or one's native tongue.

Moreover, the dissenters fail to note that two of the defendants in this case ran the Metropolitan Detention Center and are alleged to have filed false

1

documents with regard to the risk assessments of detainees and to have encouraged a dangerous environment for those detainees at the facility. As alleged in the complaint and documented by the Inspector General's report and national media, this included assaults, daily strip searches, and numerous other degrading acts. All of these actions, were they to have occurred in a regular prison environment and been employed against an inmate not suspected of posing any security risk, would have been considered unlawfully punitive. *See Bell v. Wolfish*, 441 U.S. 520, 539 (holding that particular conditions or restrictions of pretrial detention must be reasonably related to a legitimate governmental objective); *see also, e.g., Stoudemire v. Mich. Dep't of Corrs.*, 705 F.3d 560, 574 (6th Cir. 2013) ("'[A] strip search, by its very nature, constitutes an extreme intrusion upon personal privacy, as well as an offense to the dignity of the individual.'" (quoting *Wood v. Clemons*, 89 F.3d 922, 928 (1st Cir. 1996)). This view accords not only with *Iqbal*, but also with both our own prior precedent and the views expressed by several of our sister circuits in the wake of *Iqbal*. *See, e.g., Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013); *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010); *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011).

This case has drawn this Court's attention now for over thirteen years. The majority opinion and dissent have analyzed many arguments (including Judge Raggi's *Bivens* concerns, which were not even advanced by the government) and hundreds of cases. The length of our efforts now fills many pages. In our view, it is time to move the case forward.

DENNIS JACOBS, JOSÉ A. CABRANES, REENA RAGGI, PETER W. HALL, DEBRA ANN LIVINGSTON, and CHRISTOPHER F. DRONEY, Circuit Judges, dissenting from the denial of rehearing en banc:

In this case, a sharply divided panel makes our court the first in the nation to imply a Bivens damages action[1] against senior Executive Branch officials—including the former Attorney General of the United States and the Director of the FBI—for actions taken to safeguard our country in the immediate aftermath of the 9/11 attacks. See Turkmen v. Hasty, 789 F.3d 218 (2d Cir. 2015); id. at 265 (Raggi, J., dissenting in part). The question of whether to rehear this case en banc has now evenly divided the active judges of the court (6-6), which means defendants' petitions for rehearing will be denied. We six judges who voted for rehearing respectfully dissent from that denial.[2]

---

[1] See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

[2] Our court's historic reluctance to revisit panel opinions en banc has been questioned both in cases where we are the outlier in a circuit split, see 2002 Judicial Conference of the Second Circuit, Remarks by Justice Ginsburg, 221 F.R.D. 38, 223 (2002) (suggesting Second Circuit might be "a bit too resistant to en banc rehearing"), and in cases where we have deemed the issues so important as to make Supreme Court review likely, cf. Ricci v. DeStefano, 530 F.3d 88, 93 (2d Cir. 2008) (Jacobs, C.J., dissenting from denial of rehearing en banc) ("If issues are important enough to warrant Supreme Court review, they are important enough for our full Court to consider and decide on the merits.").

1

The panel decision raises questions of exceptional importance meriting further review. These concern our court's faithful adherence to controlling Supreme Court precedent respecting (1) the narrow scope of <u>Bivens</u> actions, (2) the broad shield of qualified immunity, and (3) the pleading standard for plausible claims. Judge Raggi discusses each of these points in detail in her panel dissent. <u>See</u> <u>id.</u> at 265–302. We incorporate that opinion here, which allows us to avoid repeating its analysis in summarizing our reasons for seeking <u>en banc</u> review.

\*       \*       \*

In June 2001, the Supreme Court observed that the threat of "terrorism" might demand "heightened deference to the judgments of the political branches with respect to matters of national security," including "forms of preventive detention" for illegal aliens. <u>Zadvydas v. Davis</u>, 533 U.S. 678, 696 (2001). Less than three months later, the deadliest terrorist attack in the history of this nation—committed by aliens operating under foreign direction—presented federal officials with what even the panel majority acknowledges were "unprecedented challenges" in protecting our homeland from further harm. <u>Turkmen v. Hasty</u>, 789 F.3d at 226.[3]

---

[3] <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 667 (2009) (describing "vast" federal investigation "to identify the assailants and prevent them from attacking anew"); <u>see also</u> <u>Turkmen v. Hasty</u>, 789 F.3d at 277 n.19 (Raggi, J., dissenting in part) (discussing

2

Astoundingly, given these circumstances, this court now implies a <u>Bivens</u> damages action—a practice that is generally "disfavored," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009), and usually "unjustified," <u>Wilkie v. Robbins</u>, 551 U.S. 537, 550 (2007)—to expose the former Attorney General, FBI Director, and other federal officials to potentially unlimited personal liability for their efforts to provide such protection.[4]

We are the first court to use <u>Bivens</u> to this effect. Four Courts of Appeals—for the Fourth, Seventh, Ninth, and D.C. Circuits—have declined to extend <u>Bivens</u> to suits against executive branch officials for national security actions taken after the 9/11 attacks. See <u>Vance v. Rumsfeld</u>, 701 F.3d 193 (7th Cir. 2012) (<u>en banc</u>); <u>Doe v. Rumsfeld</u>, 683 F.3d 390 (D.C. Cir. 2012); <u>Mirmehdi v. United States</u>, 689 F.3d 975 (9th Cir. 2012); <u>Lebron v. Rumsfeld</u>, 670 F.3d 540 (4th Cir. 2012); <u>see also</u> <u>Meshal v. Higgenbotham</u>, 804 F.3d 417 (D.C. Cir. 2015); <u>Ali v. Rumsfeld</u>, 649 F.3d 762 (D.C. Cir. 2011); <u>Rasul v. Myers</u>, 563 F.3d 527 (D.C. Cir. 2009). The panel decision puts this court at odds not only with these sister circuits, but also with controlling Supreme

various events in five months following 9/11 that fueled fear of further imminent terrorist attacks).

[4] It was the President of the United States who, by written instructions, assigned responsibility for homeland security after 9/11 to the Attorney General and FBI Director, as well as to the CIA Director. <u>See</u> <u>id.</u> at 273 n.9 (Raggi, J., dissenting in part).

Court precedent in the following three areas of law.

1.      The Proper Scope of *Bivens* Actions

After implying damages actions against federal officials on three occasions in the decade between 1971 and 1980, the Supreme Court has never done so again.[5] Rather, it has consistently emphasized that <u>Bivens</u> actions are limited to a few established contexts, and that those contexts cannot be generalized to extend <u>Bivens</u> further. <u>See</u> <u>Wilkie v. Robbins</u>, 551 U.S. at 549–50. Only by redefining the few established <u>Bivens</u> contexts at an impermissibly "high level of generality" has the panel majority here been able to avoid its obligation to consider whether a judicially implied damages action is "the best way" to implement constitutional guarantees in the unprecedented legal and factual circumstances of this case. <u>Id.</u> at 500, 561–62 (requiring such judgment to extend <u>Bivens</u>, and recognizing that Congress is usually in "far better position" than courts to evaluate impact of new species of litigation against those who act in public's behalf).[6]

---

[5] <u>See</u> <u>id.</u> at 267 (Raggi, J., dissenting in part) (tracing history of <u>Bivens</u> actions in Supreme Court).

[6] <u>See</u> <u>id.</u> at 268–69 (Raggi, J., dissenting in part) (explaining why generalization of <u>Bivens</u> contexts elides requirement for considered judgment about "best way" to implement constitutional guarantees in particular legal and factual circumstances).

4

The majority thereby further avoids consideration of various factors strongly counseling hesitation in extending <u>Bivens</u> here. <u>See</u> <u>Bush v. Lucas</u>, 462 U.S. 367, 378 (1983). These factors include the following:

(a)    plaintiffs here challenge an executive policy, rather than individual rogue action, the typical <u>Bivens</u> scenario[7];

(b)    the challenged policy implicates the executive's immigration authority[8];

(c)    the policy further implicates the executive's responsibility for national security, here exercised in a time of crisis[9]; and

---

[7] <u>See</u> <u>id.</u> at 272–74 (Raggi, J., dissenting in part) (discussing why <u>Bivens</u> has never been considered "'proper vehicle for altering an entity's policy'" (quoting <u>Correctional Servs. Corp. v. Malesko</u>, 534 U.S. 61, 74 (2001))).

[8] <u>See</u> <u>id.</u> at 274–75 (Raggi, J., dissenting in part) (referencing Supreme Court's recognition that "'any policy toward aliens'" is so interwoven with foreign relations, war powers, and other matters "'so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference'" absent congressional authorization (quoting <u>Harisiades v. Shaughnessy</u>, 342 U.S. 580, 588–89 (1952))).

[9] <u>See</u> <u>id.</u> at 275–78 (Raggi, J., dissenting in part) (quoting Supreme Court's observation that "'[m]atters intimately related to . . . national security are rarely proper subjects for judicial intervention'" in absence of congressional or constitutional authorization, such as habeas corpus guarantee (quoting <u>Haig v. Agee</u>, 453 U.S. 280, 292 (1981), and citing <u>Department of Navy v. Egan</u>, 484 U.S. 518, 529–30 (1988))).

(d) Congress's failure to provide a damages remedy despite longstanding awareness of the concerns raised in this lawsuit.[10]

In opposing en banc review, the members of the panel majority attempt to minimize the significance of their Bivens ruling by asserting that it does not extend to executive policy challenges but applies only to the Attorney General's alleged ratification of "the rogue acts of a number of field agents in carrying out his lawful policy." Pooler and Wesley, JJ., Op. Concurring in Denial of Reh'g En Banc ("Pooler and Wesley, JJ., Op."), ante at [1]. The assertion is belied however both by (1) plaintiffs' complaint, which specifically sues the Attorney General and FBI Director for the policies they allegedly developed and created in response to the 9/11 attacks, see Turkmen v. Hasty, 789 F.3d at 227, 263 (quoting Compl. ¶¶ 39–49, 75); and (2) the majority's own opinion, which holds that plaintiffs can use a Bivens action against the Attorney General, FBI Director, and others to challenge, not any rogue actions by field agents, but the "MDC confinement policy" of holding 9/11 detainees in "'particularly restrictive'" conditions until cleared of terrorist connections, id. at 228 (emphasis added) (quoting Compl. ¶ 76); see id. at 239 (concluding that pleadings plausibly allege that Attorney General "affirmatively supported" restrictive conditions).

---

[10] See id. at 278–80 (Raggi, J., dissenting in part) (tracing Congress's awareness).

Our concurring colleagues further confuse the issue by lumping together certain challenged policy actions, e.g. daily strip searches, with rogue conduct not authorized by any policy, e.g. assaults. See Pooler and Wesley, JJ., Op., ante at [2]. Plaintiffs' ability to use a Bivens action against individual prison officers for such rogue conduct is not at issue on this appeal.

Thus, to ensure this court's adherence to controlling Supreme Court precedent regarding the narrow scope of Bivens actions in the context of the restrictive confinement policy challenge here at issue, we should rehear this case en banc.[11]

## 2.    The Broad Shield of Qualified Immunity

Controlling Supreme Court precedent instructs that qualified immunity must be afforded defendants in this case unless the constitutional rights asserted by plaintiffs were so clearly established with respect to the "particular conduct" and the

_____

[11] This court's duty to follow Supreme Court precedent regarding the narrow scope of Bivens actions—a matter implicating the separation of powers critical to our constitutional structure, see id. at 266 n.2, 267 (Raggi, J., dissenting in part)—exists independently of any arguments made, or not made, by the government. See generally Valdez v. United States, 518 F.3d 173, 181–82 (2d Cir. 2008) (recognizing court's discretion to review unpreserved issue to remedy obvious misapplication of law). Compare Pooler and Wesley, JJ., Op., ante at [3] (asserting that concerns raised in panel dissent were not advanced by government on appeal), with Turkmen v. Hasty, 789 F.3d at 268 n.4 (Raggi, J., dissenting in part) (observing that government raised Bivens challenge in moving for dismissal but did not pursue after receiving relief on other grounds).

"specific context" at issue that every reasonable official would have understood that his conduct was unlawful. <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308 (2015) (emphasis in original) (internal quotation marks omitted); <u>see</u> <u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074, 2080, 2083 (2011). The panel majority here maintains that plaintiffs, although lawfully arrested and detained, had a right not to be restrictively confined in the absence of an individualized suspicion of dangerousness. But it cites no case clearly establishing such a right, let alone a case clearly establishing the unlawfulness of defendants' <u>particular</u> conduct in light of the <u>specific</u> context of this case. <u>See</u> <u>Mullenix v. Luna</u>, 136 S. Ct. at 308. Instead, considerable precedent, including <u>Bell v. Wolfish</u>, 441 U.S. 520, 539 (1979), cited by our concurring colleagues, <u>see</u> Pooler and Wesley, JJ., Op., <u>ante</u> at [2], suggests that restrictive confinement of lawfully detained persons can be based on general, rather than individualized, suspicion of dangerousness.[12]

---

[12] <u>See</u> <u>Turkmen v. Hasty</u>, 789 F.3d at 277, 290–93 (Raggi, J., dissenting in part) (discussing <u>Florence v. Bd. of Chosen Freeholders</u>, 132 S. Ct. 1510, 1523 (2012); <u>Whitley v. Albers</u>, 475 U.S. 312, 316 (1986); <u>Block v. Rutherford</u>, 468 U.S. 576, 585–87 (1984); <u>Bell v. Wolfish</u>, 441 U.S. 520, 558 (1979), and detailing experiences giving rise to general suspicion in this case).

We should, therefore, review en banc the panel majority's denial of qualified immunity in the unprecedented circumstances of this case.[13]

### 3. The *Iqbal* Pleading Standard

In its earlier review of this very case (then bearing a different caption), the Supreme Court made clear that to survive dismissal, plaintiffs had to plead a plausible claim grounded in a factual basis. See Ashcroft v. Iqbal, 556 U.S. at 678. The Court instructed that this standard could not be satisfied by pleading facts "merely consistent with a defendant's liability," because that fell "short of the line between possibility and plausibility." Id. (internal quotation marks omitted). As Judge Raggi's careful discussion of the pleadings and incorporated documents demonstrates, the majority's identification of viable claims, particularly policy-

---

[13] In opposing en banc review, our concurring colleagues assert that "it is time to move the case forward." Pooler and Wesley, JJ., Op., ante at [3]. But qualified immunity dictates that damages actions not move forward unless the constitutional right at issue was so clearly established in the particular context of the case as to be beyond dispute. See Plumhoff v. Rickard, 134 S. Ct. 2012, 2019 (2014) ("Qualified immunity is an immunity from suit rather than a mere defense to liability." (internal quotation marks and brackets omitted)); see also Ashcroft v. Iqbal, 556 U.S. at 685 (explaining that "basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery" (internal quotation marks omitted)). Thus, we should not hesitate to take the time for en banc review to ensure that the Attorney General, FBI Director, and other officials are not subjected to further litigation based on rights not clearly established by law.

challenging claims against the Attorney General and FBI Director, frequently relies only on hypothesized possibilities,[14] or on conclusory assumptions or insinuations of discriminatory purpose that the Supreme Court has already rejected. See Pooler and Wesley, JJ., Op., ante at [1] (repeating conclusory assumptions).[15]

The need to ensure faithful adherence to the Iqbal pleading standard, pronounced by the Supreme Court in this very case, is thus a further reason for en banc review.

*     *     *

To conclude, we observe that our court's failure to adhere to controlling Supreme Court precedent would raise a serious concern in any case. But here, that

---

[14] See Turkmen v. Hasty, 789 F.3d at 282–90 (Raggi, J., dissenting in part) (explaining how majority's hypotheses as to possible involvement of Attorney General and FBI Director in challenged detentions are actually belied by record facts).

[15] In Ashcroft v. Iqbal, the Supreme Court stated that restrictive confinement of 9/11 detainees until cleared of terrorist activities did not state a constitutional claim absent plausible allegations that the restrictions were "due to" the detainees' "race, religion, or national origin." 556 U.S. at 683. Further, the Court held that the disparate impact on Arab Muslims of the hold-until-cleared policy was not enough to imply discriminatory intent given that the 9/11 attacks were carried out by Arab Muslim members of an Islamic fundamentalist group comprised largely of Arab Muslims. See id. at 682. Judge Raggi's dissent explains why Iqbal's reasoning necessarily defeats plaintiffs' amended pleadings. See Turkmen v. Hasty, 789 F.3d at 295–300.

concern is compounded by the panel's departure from precedent in <u>three</u> areas of law. Further, this concern arises in a case requiring a former Attorney General and FBI Director, among other federal officials, to defend against claims for money damages based on a detention policy applied to illegal aliens in the immediate aftermath of a terrorist attack on this country by aliens. Together, these circumstances present important legal issues warranting full-court review.[16] Further, the Supreme Court has already once reviewed—and reversed—this court for allowing plaintiffs to pursue deficient claims against the Attorney General and FBI Director in this case. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662. This litigation history, when considered together with the sharp panel division, the even division (6-6) of active judges in the <u>en banc</u> poll, and our split from sister circuits, only reinforces the propriety of our rehearing this case ourselves in advance of any possible further consideration by the Supreme Court.

Accordingly, we dissent from the denial of defendants' petitions for <u>en banc</u> review.

---

[16] While the focus of our concern in seeking <u>en banc</u> review is the panel majority's decision to allow plaintiffs to pursue damages against the Attorney General and FBI Director, Judge Raggi's dissent explains why plaintiffs' policy-based claims against other officials should also be dismissed, obviating the need for us to discuss them here. <u>See</u> <u>id.</u> at 293–95, 298–302.