Tanvir v. Tanzin

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the fourteenth day of February, two thousand nineteen.

PRESENT:

ROBERT A. KATZMANN,
*Chief Judge*,
DENNIS JACOBS,
JOSÉ A. CABRANES,
ROSEMARY S. POOLER,
PETER W. HALL,
DENNY CHIN,
RAYMOND J. LOHIER, JR.,
SUSAN L. CARNEY,
CHRISTOPHER F. DRONEY,
RICHARD J. SULLIVAN,
*Circuit Judges*.*

---

MUHAMMAD TANVIR, JAMEEL ALGIBHAH, NAVEED SHINWARI,

*Plaintiffs-Appellants*,

v.                                          No. 16-1176

FNU TANZIN, Special Agent, FBI; SANYA GARCIA, Special Agent, FBI; JOHN LNU, Special Agent, FBI; FRANCISCO ARTUSA, Special Agent,

---

* Circuit Judge Debra Ann Livingston recused herself from these proceedings.

FBI; JOHN C. HARLEY III, Special Agent, FBI; STEVEN LNU, Special Agent, FBI; MICHAEL LNU, Special Agent, FBI; GREGG GROSSOEHMIG, Special Agent, FBI; WEYSAN DUN, Special Agent in Charge, FBI; JAMES C. LANGENBERG, Assistant Special Agent in Charge, FBI; JOHN DOE #1, Special Agent, FBI; JOHN DOE #2, Special Agent, FBI; JOHN DOE #3, Special Agent, FBI; JOHN DOE #4, Special Agent, FBI; JOHN DOE #5, Special Agent, FBI; JOHN DOE #6, Special Agent, FBI,

*Defendants-Appellees*.

| | |
|---|---|
| For Plaintiffs-Appellants: | RAMZI KASSEM (Naz Ahmad, *on the brief*), CLEAR Project, Main Street Legal Services, Inc., City University of New York School of Law, Long Island City, NY. |
| | Jennifer R. Cowan, Erol Gulay, Sandy Tomasik, Debevoise & Plimpton LLP, New York, NY. |
| | Shayana D. Kadidal, Baher Azmy, Center for Constitutional Rights, New York, NY. |
| For Defendants-Appellees: | ELLEN BLAIN, Assistant United States Attorney (Benjamin H. Torrance, Assistant United States Attorney, *on the brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY. |

Following disposition of this appeal on June 25, 2018, an active judge of the Court requested a poll on whether to rehear the case *en banc*. A poll having been conducted and there being no majority favoring *en banc* review, rehearing *en banc* is hereby **DENIED**.

Rosemary S. Pooler, *Circuit Judge*, joined by Robert A. Katzmann, *Chief Judge*, concurs by opinion in the denial of rehearing *en banc*.

Dennis Jacobs, *Circuit Judge*, joined by José A. Cabranes and Richard J. Sullivan, *Circuit Judges*, dissents by opinion from the denial of rehearing *en banc*.

José A. Cabranes, *Circuit Judge*, joined by Dennis Jacobs and Richard J. Sullivan, *Circuit Judges*, dissents by opinion from the denial of rehearing *en banc*.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

**ROBERT A. KATZMANN,** *Chief Judge*, **and ROSEMARY S. POOLER,** *Circuit Judge*, **concurring in the denial of rehearing** *en banc*:[1]

Our dissenting colleagues do their level best to disguise the panel's opinion as an extension of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). They claim that despite the Supreme Court's recent decisions restraining *Bivens* actions, the panel's opinion effectively dabbles in the now-forbidden practice of implying private rights of action. Dissent from the Denial of Rehearing En Banc (Jacobs, *J.*), slip op. at 5; Dissent from the Denial of Rehearing En Banc (Cabranes, *J.*), slip op. at 1-2. But these arguments deny an incontrovertible truth: the panel's opinion does not imply a private right of action. To the contrary, RFRA contains an *express* private right of action with an *express* provision for "appropriate relief." *See* 42 U.S.C. § 2000bb-1(c).[2] The panel opinion interprets RFRA's express private right of action to support a damages

---

[1] Pursuant to Second Circuit En Banc Protocol 12, Judge Gerard E. Lynch, although a member of the panel that decided this case, is a Senior Judge and thus may not report his views on the petition for rehearing en banc.

[2] RFRA's private right of action in its entirety states:

> A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.

42 U.S.C. § 2000bb-1(c).

remedy where appropriate—a conclusion based on principles of statutory interpretation that *Bivens* and its progeny do not touch.

Separation of powers considerations compel the judiciary to exercise "caution with respect to actions in the *Bivens* context, where [an] action is implied to enforce the Constitution itself." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017). Undoubtedly, the Supreme Court's hesitancy to apply *Bivens* to new contexts reflect a concern for judicial absorption of legislative power: "[T]he inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58. The Court suggests that Congress is typically the best-suited institution to resolve the "host of considerations that must be weighed and appraised" in deciding whether a remedy for constitutional or statutory rights exists. *Id.* at 1857 (internal quotation marks omitted).

But despite our dissenting colleagues' protests, the Court's reasoning in *Ziglar* is inapplicable to the question of whether Congress's provision in RFRA for litigants to "obtain appropriate relief against a government," 42 U.S.C. § 2000bb-1(c), contemplates a damages remedy. *Franklin v. Gwinnett Cty. Pub. Schs.*,

2

503 U.S. 60, 65-66 (1992) ("[T]he question of what remedies are available under a statute that provides a private right of action is analytically distinct from the issue of whether such a right exists in the first place." (internal quotation marks omitted)). In the context of an implied remedy, the *Ziglar* Court instructed that the answer to this question is that Congress typically decides "whether to provide for a damages remedy." 137 S. Ct. at 1857. This truism recognizes that the judiciary's power to impose liability by creating a private right of action vis-à-vis Congress's silence is modest. *See, e.g., Cort v. Ash*, 422 U.S. 66, 78 (1975) (defining four searching requirements for implying a private right of action). By contrast, in the context of a private right of action, Congress has already spoken to impose liability and thereby bestows the judiciary with greater power to effect a remedy. *E.g., Bell v. Hood*, 327 U.S. 678, 684 (1946) ("[I]t is . . . well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done."). The role of the court in this case is different because implying a right of action is a judicially constructed remedy, whereas interpreting a statute to provide a damages remedy is a time-honored

3

exercise of the judiciary's power to grant relief where Congress has legislated liability.

This makes sense. While it would upset the separation of powers for federal courts "to award remedies when the Constitution or laws of the United States do not support a cause of action," if federal courts declined to recognize remedies for express causes of action, it "would harm separation of powers principles in another way, by giving judges the power to render inutile causes of action authorized by Congress." *Franklin*, 503 U.S. at 74. Thus, the opinion, rather than narrowly skirting the Supreme Court's *Bivens* jurisprudence (as the dissents from rehearing darkly imply), recognizes the Court's power where separation of powers concerns are weakest.

It is therefore axiomatic that the judiciary's interpretation of "appropriate relief" as prescribed in an express right of action is not akin to a *Bivens* action. Unlike a *Bivens* action, where the Court itself implies a cause of action, *Tanvir* considers the scope of an express right of action with an express provision of remedies from Congress. This distinction is critical, and no sleight of the law can elide *Bivens* and the judiciary's power to interpret statutes.

4

The opinion stands on its own to address the dissents' remaining arguments. We write separately merely to expose the dissents' *Bivens* accusations as a red herring.

**DENNIS JACOBS, *Circuit Judge*, joined by JOSÉ A. CABRANES and RICHARD J. SULLIVAN, *Circuit Judges*, dissenting from the denial of rehearing *en banc*:**

Plaintiffs allege that they were placed on the national "No Fly List," though they posed no threat to aviation, in retaliation for their refusal to become FBI informants reporting on fellow Muslims. The claim is that the retaliation they suffered substantially burdened their exercise of religion, in violation of the Religious Freedom Restoration Act ("RFRA"), because their refusal was compelled by Muslim tenets.

The sufficiency of such a claim is not at issue on appeal; so the only issue is whether RFRA affords a money-damages remedy against federal officers sued in their individual capacities. The panel opinion argues that: the statute permits "appropriate relief against a government"; a government is defined to include "a branch, department, agency, instrumentality, and official (or other person acting under color of law)"; money damages is presumptively "appropriate relief"; and therefore money damages is appropriate relief against individual officers.

Because the panel's reasoning fails as a matter of law and logic and runs counter to clear Supreme Court guidance on this subject, I would grant *in banc* review and reverse the panel's erroneous creation of a right to money damages under RFRA. Indeed, the panel's expansive conclusion could be viewed without

1

alarm only by people (judges and law clerks) who enjoy absolute immunity from such suits.

**I**

RFRA states in relevant part that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government."  42 U.S.C. § 2000bb-1(c).  As to whether this statute affords a money-damages remedy against individual federal officers, precedent points the way with graphic simplicity.

This Court has already decided the scope of an identical private right of action in the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").  RLUIPA and RFRA alike forbid substantial burdens on religious exercise: RLUIPA applies to the states, while RFRA applies to the federal government.  We held that the phrase "appropriate relief against a government" in RLUIPA does not create a private right of action against state officials sued in their individual capacities.  *Washington v. Gonyea*, 731 F.3d 143, 146 (2d Cir. 2013).  *Washington* is fully consistent with the Supreme Court's ruling that RLUIPA does

2

not authorize private suits for money damages against the states themselves. *Sossamon v. Texas*, 563 U.S. 277, 293 (2011).

The district court followed these precedents. The panel opinion labors to distinguish them. To distinguish *Washington* and *Sossamon*, the panel opinion emphasizes that they were informed by Congress's Spending Clause powers and by state sovereign immunity (respectively), considerations not present here. But in *Sossamon*, the Supreme Court relied not on sovereign immunity alone, but on the plain meaning of the text. The Court explained that the phrase "appropriate relief" takes its meaning from "context." *Sossamon*, 563 U.S. at 286. In RLUIPA (as in RFRA) the context is clear: the full phrase is "appropriate relief against a government." As the Supreme Court explained, "[t]he context here--where the defendant is a sovereign--suggests, if anything, that monetary damages are not 'suitable' or 'proper.'" *Id.* Given that RFRA and RLUIPA attack the same wrong, in the same way, in the same words, it is implausible that "appropriate relief against a government" means something different in RFRA, and includes money damages.

As the panel opinion concedes, "RLUIPA borrows . . . an express private cause of action that is taken from RFRA"; "[a]s a result, courts commonly apply

3

RFRA case law to issues arising under RLUIPA and vice versa." Op. 31 n.8

(internal quotation marks omitted). And the holding in *Washington*--that

RLUIPA creates no private right of action against state officials in their

individual capacities--was reached "as a matter of statutory interpretation." 731

F.3d at 146.

The panel opinion deems it significant that RFRA's definition of

"government" includes an "official (or other person acting under color of law)."

The use of language similar to that found in 42 U.S.C. § 1983, the panel argues,

suggests personal liability for money damages under RFRA. This argument is

self-defeating. First, the inclusion of the word "official" in the definition of

"government" would be required simply to facilitate injunctive relief; it therefore

tells us nothing about damages. Moreover, Congress's use of a *definition* similar

to that found in § 1983 only highlights the fact that Congress declined to enact

*relief* similar to that found in § 1983. RFRA contains nothing akin to § 1983's

explicit endorsement of suits for money damages ("shall be liable to the party

injured in an action at law, suit in equity, or other proper proceedings for redress

. . ."). Surely this was not a careless oversight.

The panel opinion also fails to account adequately for the limiting term "appropriate relief," which "is open-ended and ambiguous about what types of relief it includes." *Sossamon*, 563 U.S. at 286. "Far from clearly identifying money damages, the word 'appropriate' is inherently context-dependent," *Sossamon*, 563 U.S. at 286, and we must therefore consider what forms of relief may be appropriate against different persons defined in RFRA as components of government.

The reading of RLUIPA is easily extended to the reading of RFRA. The District of Columbia Circuit recognized in *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006), that "appropriate relief against a government" in RFRA does not include money damages against the federal government--just as the Supreme Court in *Sossamon* later read the same wording in RLUIPA to foreclose a money damages award against a state. I would follow suit, and align this case, which considers personal damages awards under RFRA, with our *Washington* precedent on personal damages awards under RLUIPA.

As the district court opinion observed, "every other federal statute identified by Plaintiffs as recognizing a personal capacity damages action against federal officers . . . includes specific reference to the availability of damages."

5

*Tanvir v. Lynch*, 128 F. Supp. 3d 756, 778 (S.D.N.Y. 2015) (subsequent history

omitted). The omission of any such language in RFRA is telling, and in my view

conclusive.

## II

Proceeding backwards, the panel opinion observes that RFRA's legislative

history does not evince "a clear and express indication that Congress intended to

*exclude* individual damages claims from the scope of RFRA's available relief."

Op. 55 (emphasis added). Maybe; but the absence of such an indication does not

support a positive inference. The opinion's (lame) conclusion is that it was "at

least possible at the time that Congress passed RFRA that an individual damages

claim would have been available for a free exercise violation." Op. 53.

If a statute imposes personal damages liability against individual federal

officers, one would expect that to be done explicitly, rather than by indirection,

hint, or negative pregnant. There is no such explicit wording in RFRA because

the manifest statutory purpose has nothing to do with such a remedy. The

Religious Freedom Restoration Act was enacted to restore religious freedom that

Congress believed had been curtailed by *Employment Division v. Smith*, 494 U.S.

872 (1990), which held that under the First Amendment no compelling

6

government interest is required to justify substantial burdens on religious exercise imposed by laws of general application.

As the panel opinion concedes, RFRA's legislative history was "absolutely clear" that "the act does not expand, contract or alter the ability of a claimant to obtain relief in a manner consistent with the Supreme Court's free exercise jurisprudence under the compelling governmental interest test prior to *Smith*." Op. 50 (internal quotation marks omitted). The panel opinion fails to draw the obvious inference: in the Supreme Court's free exercise jurisprudence pre-*Smith*, the Court had never held that damages against the government for First Amendment violations were available--let alone personal damages against individual federal officers. That is unsurprising given the default principle that "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

### III

To support the idea that RFRA provides a personal damages remedy against individual officers, the panel relies on *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992). *Franklin*, however, does not create a presumption in

7

favor of money damages; rather, it simply recognizes a presumption (in the absence of contrary indication) that a private right of action is enforced by all "appropriate" remedies. That of course simply begs the question. Indeed, RFRA itself *already* speaks of "appropriate relief"; so *Franklin* provides no new information. In other cases, of course, the Supreme Court has offered guidance regarding whether money damages are generally considered appropriate relief against governments and government officials. Its answer is no. *See, e.g., Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017); *Sossamon*, 563 U.S. at 286.

In any event, the *Franklin* presumption was created in the context of an *implied* right of action "[w]ith no statutory text to interpret." *Sossamon*, 563 U.S. at 288. That presumption is held in *Sossamon* to be "irrelevant to construing the scope of an express waiver of sovereign immunity." *Id.* The waiver of sovereign immunity in RFRA is of course "express."

The panel opinion detects irony in a rule that may presume a broader set of remedies in an implied right of action than in a right of action that is express. But irony is dispelled when one considers that implied rights of action for damages against individual federal officers--*i.e., Bivens* actions--are not in vogue; they are tolerated in the few existing contexts, and may never be created in any

8

other context whatsoever. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) ("[W]e have consistently refused to extend *Bivens* liability to any new context or new category of defendants."); *see also Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (in banc).

The panel has done what the Supreme Court has forbidden: it has created a new *Bivens* cause of action, albeit by another name and by other means. The Supreme Court did not shut the *Bivens* door so that we could climb in a window. The panel ignores the considerations that inform the Supreme Court's refusal to extend *Bivens*. A private right of action for money damages against individual officers of "a government" entails "substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). We must consider "the burdens on Government employees who are sued personally," and the "costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies." *See Ziglar*, 137 S. Ct. at 1858.

9

The remedy created by the panel opinion is considerably more inhibiting than the personal damages remedy in the context of 42 U.S.C. § 1983, which is mitigated by qualified immunity. The panel opinion mentions (without deciding) that qualified immunity may be available as possible mitigation. Mitigation of error is always encouraging, and I have no doubt that qualified immunity does apply here. Indeed, I have difficulty imagining a scenario in which its applicability would be more apparent: the defendants here are FBI agents pursuing a national security investigation, and were never told that Plaintiffs believed cooperating with an investigation "burdened their religious beliefs." Yet a court's finding of qualified immunity is never a foregone conclusion, and many courts--including our own--have occasionally failed to apply it when appropriate. *See, e.g.*, *Iqbal v. Hasty*, 490 F.3d 143, 153 (2d Cir. 2007). The panel's remand on this issue sows doubt where there should be none.

With or without qualified immunity, such liability would result in federal policy being made (or frozen) by the prospect of impact litigation. The safest course for a government employee in doubt would be to avoid doing one's job, which is not a choice in need of encouragement.

10

*       *       *

I respectfully dissent from the denial of *in banc* review because the panel

opinion is quite wrong and actually dangerous.

**JOSÉ A. CABRANES**, *Circuit Judge*, **joined by DENNIS JACOBS and RICHARD J. SULLIVAN**, *Circuit Judges*, **dissenting from the denial of rehearing** *en banc*:

I fully join Judge Jacobs' thorough dissent, which does the heavy lifting on the merits. I write separately simply to emphasize that the panel decision represents a transparent attempt to evade, if not defy, the precedents of the Supreme Court.

For nearly half a century, the Supreme Court has "consistently rejected invitations" to extend the *Bivens* remedy to new contexts. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001). Yet twelve years ago, in *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007), a panel of our Court entertained the extension of *Bivens* to several such contexts, including violations of the Free Exercise clause. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court forcefully reversed, reminding us not to "extend *Bivens* liability to any new context or new category of defendants" including "an implied damages remedy under the Free Exercise Clause." *Id*. at 675 (internal quotation marks omitted).

Nevertheless, four years ago, there was another attempt to evade the Supreme Court's clear instruction. In *Turkmen v. Hasty*, 789 F.3d 218 (2d Cir. 2015), a panel of our Court sought to extend the *Bivens* remedy to the extraordinary case of officials implementing national security policy. A motion to

1

rehear the case *en banc* failed by vote of an evenly divided court (6-6). *See* 808

F.3d 197 (2d Cir. 2015). Once again, however, the Supreme Court intervened,

reining in our Court's misplaced enthusiasm for creating official liability *ex nihilo*.

*See Ziglar v. Abbasi,* 137 S. Ct. 1843 (2017).

In *Ziglar,* the Supreme Court not only reversed us, but patiently explained

*why* damages remedies against government officials are disfavored and should

not be recognized absent explicit congressional authorization: "Claims against

federal officials often create substantial costs, in the form of defense and

indemnification . . . time and administrative costs . . . resulting from the

discovery and trial process." *Id.* at 1856. These costs, the Supreme Court

instructed, provide "sound reasons to think Congress might doubt the efficacy or

necessity of a damages remedy." *Id.* at 1858. Thus "courts must refrain from

creating the remedy in order to respect the role of Congress." *Id*.

It appears our Court is still incapable of learning this lesson. In the instant

case, however, we have developed still another rationalization for avoiding the

Supreme Court's instruction. "We are not extending *Bivens,*" the panel in effect

insists. "We are simply presuming that Congress legislated a *Bivens*-like

remedy—*sub silentio*—in enacting RFRA."

2

This rationalization is as flawed as it is transparent. Insofar as this panel suggests we may assume that Congress authorized such damages implicitly, *Ziglar* reminds us that "Congress will be explicit if it intends to create a new private cause of action" or "substantive legal liability," particularly for government officials. *Id.* at 1856-57. Insofar as the panel suggests that Congress incidentally legislated such a remedy—as part of its general intent to restore the Free Exercise legal structure antedating *Employment Division v. Smith*, 494 U.S. 872 (1990)—*Iqbal* makes clear that damages are not, and never have been, available for Free Exercise claims. 556 U.S. at 676.

In sum, RFRA reveals no Congressional intent to create a damages remedy, and on no theory may we presume it.

When asked why he persisted in issuing decisions that the Supreme Court would predictably overturn, a prominent judge of another circuit once explained, "[t]hey can't catch 'em all."[1] Such an attitude is not, and must not become, the approach of our Circuit.

---

[1] Linda Greenhouse, *Dissenting Against the Supreme Court's Rightward Shift,* N.Y. TIMES, April 12, 2018, https://www.nytimes.com/2018/04/12/opinion/supreme-court-right -shift.html.