**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LANCE CONWAY WOOD, *Plaintiff-Appellant*, | No. 12-35336 |
| v. | D.C. No. 1:07-cv-00350-EJL |
| KEITH YORDY, Ex-Deputy Warden at Idaho State Correctional Institution (ISCI); STEVE NELSON, Ex-Deputy Warden at ISCI; JAY CHRISTENSEN, Deputy Warden at ISCI; ERIC MACEACHERN, Deputy Warden at Idaho Correctional Institution of Orofino (ICIO); TODD MARTIN, Deputy Warden of ICIO; BILL FINELY, Sergeant of ISCI; SANDRA MARTIN, Ex-Correctional Officer CIO of ICIO; LAWANDA THOMASON, Ex-Lieutenant at ICIO; MIKE LUDLOW, C/O at ISCI; LESLIE PETERSEN, Coordinator at ISCI, *Defendants-Appellees*. | OPINION |

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, District Judge, Presiding

Argued and Submitted
October 1, 2013—University of Idaho Law School

Filed June 3, 2014

Before: Mary M. Schroeder, Sidney R. Thomas,
and N. Randy Smith, Circuit Judges.

Opinion by Judge Schroeder

## SUMMARY[*]

### Prisoner Civil Rights

The panel affirmed the district court's grant of summary judgment in favor of prison officials in an action brought by an Idaho state prisoner under the Religious Land Use and Institutionalized Persons Act.

The panel held that plaintiff could not seek damages under the Religious Land Use and Institutionalized Persons Act against prison officials in their individual capacities. The panel held that the Act does not authorize suits against a person in anything other than an official or governmental capacity because it was enacted pursuant to Congress's constitutional powers under the Spending Clause, and the individual defendants were not recipients of any federal funds.

The panel also affirmed the district court's dismissal of plaintiff's claims alleging he was retaliated against in violation of his First Amendment rights. The panel

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

determined that there was insufficient evidence to create a material issue of fact as to a retaliatory motive.

## COUNSEL

Warren Postman (argued) and Shay Dvoretzky, Jones Day, Washington, D.C., for Plaintiff-Appellant.

Michael J. Elia (argued) and Brady J. Hall, Moore & Elia, LLP, Boise, Idaho, for Defendants-Appellants.

## OPINION

SCHROEDER, Senior Circuit Judge:

Plaintiff Lance Wood is an Idaho state prisoner with an apparent penchant for romantic (but, as all parties stress, not sexual) relationships with prison guards. When prison authorities found that he was utilizing chapel facilities for such purposes, they curtailed his opportunities for chapel access. He filed this action against individual prison officials under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), claiming they had imposed an unwarranted burden on his exercise of religion. The issue of first impression in this circuit is whether he may seek damages against prison officials in their individual capacities. We agree with the unanimous conclusion of all of the other circuits that have addressed the issue that such a claim may not be maintained. This is principally because RLUIPA was enacted pursuant to Congress's constitutional powers under the Spending Clause, and the individual defendants are not

recipients of any federal funds. *See, e.g.*, *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012).

Wood also claims a violation of his First Amendment rights, alleging the defendants acted in retaliation for an earlier suit, in which he prevailed on appeal in a 42 U.S.C. § 1983 due process claim arising out of one of his prison guard relationships. *Wood v. Beauclair*, 692 F.3d 1041 (9th Cir. 2012). There is, however, insufficient evidence to create a material issue of fact as to a retaliatory motive.

We therefore affirm the district court's grant of summary judgment in favor of the defendants.

## BACKGROUND

Wood is currently serving a life sentence in Idaho prisons. The relationship that led to *Wood v. Beauclair* began in 2003 in the Idaho Correctional Institute-Orofino ("ICIO"). He was later transferred to the Idaho State Correctional Institution ("ISCI") where he is currently housed.

Wood, who characterizes himself as a very religious person, began soon after his transfer to engage in many activities in the prison chapel. These included working as a janitor, attending services, and volunteering in various capacities. In the course of investigating the relationship with Correction Officer Taylor-Martin underlying the *Wood v. Beauclair* litigation, the Deputy Warden of ISCI, Keith Yordy, discovered that Wood may also have been involved in an improper relationship with an ISCI officer, Cheryl Davis, and that Wood was using the prison chaplain, Les Petersen, as a go-between to communicate with Davis. According to

Yordy, in 2006 he limited Wood's chapel access in order to curtail his contacts with Petersen pending an investigation.

In early 2007, the Deputy Warden of Operations at ISCI, defendant Steve Nelson, directed one of the chaplains to further restrict Wood's access to the chapel to two hours a week, to consist of private counseling. According to Nelson, this action was taken because Wood's activities had created tension between chaplains and with other inmates who complained Wood was monopolizing the chapel.

In addition to the chapel restrictions, Wood alleges there was a pattern of harassment conducted by another correctional officer, Mike Ludlow. As part of this alleged pattern, Ludlow falsely reported that he had seen Wood stash contraband prescription medication in a windowsill. The charge against Wood was later dismissed on appeal.

Wood filed this action in 2007 under RLUIPA against defendants Yordy and Nelson claiming damages from them in their individual capacities, and under § 1983 against Ludlow, as well as Yordy and Nelson, for First Amendment retaliation. The district court granted summary judgment on all of the claims, and Wood appeals.

## DISCUSSION

RLUIPA, in relevant part, prohibits any "government" from burdening the religious exercise of a person residing in a correctional institution. 42 U.S.C. § 2000cc-1. RLUIPA was passed in the wake of the Supreme Court's decision in *City of Boerne v. Flores*, 521 U.S. 507 (1997), limiting congressional power under the Fourteenth Amendment to restrict governmental interference with the exercise of

religion. RLUIPA was then enacted pursuant to Congress's spending and commerce powers. *Sossamon v. Texas*, 131 S. Ct. 1651, 1656 (2011). RLUIPA affects only prisons and land use.

With respect to prisons, RLUIPA's reach is limited to prohibiting a "government" from burdening religious exercise in correctional institutions. 42 U.S.C. § 2000cc-1. The Act goes on to define "government" as any governmental entity created under the authority of the State, and "any other person acting under the color of State law." § 2000cc-5(4). The Act authorizes private citizens to assert a violation as a claim or defense in a judicial proceeding and to "obtain appropriate relief against a government." § 2000cc-2(a).[1]

---

[1] The statute reads in relevant part:

> (a) General rule
>
> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
>
> > (1) is in furtherance of a compelling governmental interest; and
> >
> > (2) is the least restrictive means of furthering that compelling governmental interest.
>
> (b) Scope of application
>
> This section applies in any case in which–

In *Sossamon v. Texas*, the Supreme Court considered the phrase "appropriate relief." *Sossamon* concerned an action for damages against state officers in their official capacity. 131 S. Ct. at 1656. The Court held the statutory language was not sufficiently specific to abrogate state sovereign immunity with respect to money damages. *Id*. at 1660. Wood correctly points out that his suit against state officers as individuals would not implicate sovereign immunity. Immunity, however, is not the issue before us. The question before us, and that has been decided adversely to plaintiffs by

---

> (1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; or

> (2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes.

42 U.S.C. § 2000cc-1. The cause of action provision states:

> [a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government.

*Id*. § 2000cc-2(a). "Government" is then defined as

> (i) a State, county, municipality, or other governmental entity created under the authority of a State;

> (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and

> (iii) any other person acting under color of State law . . . .

*Id*. § 2000cc-5(4)(A).

all of the other circuit courts to consider a suit like this one, is whether allowing such an action against individuals who do not receive any federal money would reach beyond the scope of Congress's constitutional authority. All of the circuits have refused to allow such an action to go forward. The principal underlying reason is the limitations of Congress's power under the Spending Clause.

In the leading Spending Clause decision, *Pennhurst State School & Hospital v. Halderman*, the Supreme Court recognized that, pursuant to its spending powers, Congress may place conditions on the disbursement of federal funds. 451 U.S. 1, 17 (1981). The Court explained that such legislation functions like a contract. In return for funds, states agree to adhere to any attached conditions. *Id.* These conditions, however, must be clearly stated. Otherwise, states cannot be said to have knowingly accepted them. *Id.*

In reliance on *Pennhurst*, the Seventh Circuit in *Nelson v. Miller*, 570 F.3d 868 (7th Cir. 2009), held that legislation enacted pursuant to the Spending Clause cannot subject state officers to individual suits, because the individual officers are not the recipients of any federal funds. The individuals thus cannot be bound by contractual conditions which would attach to receipt of the funds. *Id.* at 888–89. The Third and Tenth Circuits are now in accord. *Sharp v. Johnson*, 669 F.3d 144 (3d Cir. 2012); *Stewart v. Beach*, 701 F.3d 1322 (10th Cir. 2012). The Fourth Circuit had earlier rejected such suits on the related ground that the statute itself does not give sufficient notice that the receipt of funds for prisons would be conditioned on the "creation of an individual capacity damages action." *See Rendelman v. Rouse*, 569 F.3d 182, 188 (4th Cir. 2009).

Wood, while acknowledging the force of these holdings, contends they are undermined by the Supreme Court's decision in *Sabri v. United States*, 541 U.S. 600 (2004). *Sabri* was a prosecution under the federal bribery statute, enacted pursuant to the Spending Clause, to criminalize bribes to recipients of federal funds. *Id*. at 602. In *Sabri*, the question was whether the bribe had to directly affect the expenditure of federal funds, and the Supreme Court answered in the negative. It held that because funds are fungible, if the entity receiving the federal funds was the object of the bribe, the statute was violated. *Id*. at 606.

Focusing on the fact that the criminal defendant in *Sabri* was not the recipient of federal funds, Wood attempts to argue that the Supreme Court opinion means defendants in a civil damage action under RLUIPA need not be recipients of federal funds. This is not a sensible conclusion. The point in *Sabri* was to protect the financial integrity of the governmental entity that did receive the federal funds. Thus paying a bribe to that entity violated the statute, even if the bribe did not directly affect the federal funds. In this case, Wood's suit against the defendants in their individual capacities seeks to hold them liable for their personal conduct. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). By definition, in suing these defendants in their individual capacities, Wood is not targeting assets of the entities that receive federal funds, i.e., the prison or the State. Wood's argument, while novel, does not further the purpose of the statute. It also lacks support in any of the circuit decisions that have been decided before or after *Sabri*.

Wood additionally argues that our circuit's decision in *Centro Familiar Cristiano Buenas Neuvas v. City of Yuma*, 651 F.3d 1163 (9th Cir. 2011), supports a holding that he may

maintain a cause of action against the individual defendants. This argument is even more of a stretch than the *Sabri* argument, because in *Yuma* we held only that the City of Yuma, as a municipality, did not share the sovereign immunity of the State. *Id*. at 1168–69. Wood's theory is that since our court in *Yuma* did not expressly say the City's liability depended on its receipt of federal funds, the case stands for the proposition that any entity lacking immunity may be held liable under RLUIPA, regardless of whether it receives federal funds. This flies in the face of the history of the statute, the principles underlying the Supreme Court's decision in *Pennhurst* regarding the Spending Clause, and even the underlying facts in *Yuma*. *Yuma* concerned whether the city had violated a different section of RLUIPA, the "equal terms" provision of 42 U.S.C. § 2000cc(b)(1). *Id*. at 1169. That provision is on its face not limited to entities that receive federal financial assistance. § 2000cc(b)(1). The issues before this court, however, did not concern whether the City had to be a recipient of federal funds to be liable under RLUIPA. The issue concerned immunity and the merits of the violation. Moreover, as the district court in *Yuma* recognized, federal funds were involved since the entire case was about the City's establishment of the federally funded Yuma Crossing National Heritage Area, ("YCNHA"). *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 615 F. Supp. 2d 980, 983 (D. Ariz. 2009); YUMA CROSSING NATIONAL HERITAGE AREA ACT OF 2000, Pub. L. No. 106-319, October 19, 2000, 114 Stat 1280 (authorizing the YCNHA to grant funds to state municipalities). *Yuma* does not support allowing a prisoner to pursue a RLUIPA claim against individuals who do not receive federal funds.

Finally, there is nothing in the language or structure of RLUIPA to suggest that Congress contemplated liability of

government employees in an individual capacity. The statute is aimed at burdens on religious exercise by a "government." The statute defines the term "government" to mean "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) any other person acting under color of State law . . . ." 42 U.S.C. § 2000cc-5(4)(A).

Individuals acting under color of state law are thus brought within the purview of the Act only as a part of the definition of "government." If an individual acts under color of state law to burden a plaintiff's rights to religious exercise, the plaintiff can sue the government. The statute does not authorize suits against a person in anything other than an official or governmental capacity, for it is only in that capacity that the funds are received. That is the only reading of the statute that is consistent with the decisions of our sister circuits and the constitutional limitations on the Spending Clause that the Supreme Court has recognized. The district court properly granted summary judgment in favor of the defendants under RLUIPA.

The remaining claim to be discussed is the First Amendment retaliation claim. Here, Wood points to isolated fragments of statements by prison officials, as overheard by other inmates, expressing dislike for Wood. In addition, he claims he read a memo in 2007 by defendant Nelson, the ISCI Deputy Warden, to the ISCI chaplain that "we cannot make it appear that an inmate can win." Wood contends that these statements suggest a link between restrictions on his ISCI chapel usage and the earlier *Beauclair* lawsuit, involving incidents that occurred in ICIO, Wood's former prison.

The statements, however, contain no indication that they were made in reference to the prior lawsuit, as opposed to Wood's contemporaneous conduct in ISCI. We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011); *see also McCollum v. Cal. Dep't of Corr. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (specific evidence of retaliation required). There is nothing in the record to indicate Nelson even knew about the earlier suit. There is similarly no evidence to show that Ludlow knew about the earlier suit or other evidence suggesting that the claimed harassment by Ludlow was in retaliation for the earlier suit. The district court correctly granted summary judgment against Wood on the retaliation claim.

The district court also dismissed Wood's claims against two other prison officials, Thomason and MacEachern, finding that he failed to exhaust his administrative remedies as required by the Prison Litigation and Reform Act. 42 U.S.C. § 1997e(a). To the extent that Wood is seeking to resurrect claims other than First Amendment Retaliation against these defendants, we affirm the district court's dismissal. While Wood contends that prison officials prevented him from completing the grievance process, the district court found that he had failed to follow through with his complaints. Nothing in the record indicates that this conclusion was clearly erroneous. *Morton v. Hall*, 599 F.3d 942, 945 (9th Cir. 2010) ("In reviewing a dismissal for failure to exhaust administrative remedies, we review the district court's legal conclusions de novo and factual findings for clear error.").

**AFFIRMED**.