*Tripathy v. McKoy*

# United States Court of Appeals
# For the Second Circuit

August Term 2023

Argued:  April 30, 2024
Decided: May 29, 2024

No. 23-919

SANJAY TRIPATHY,

*Plaintiff-Appellant*,

*v.*

JEFF MCKOY, Deputy Commissioner, DOCCS, RYAN
BROTZ, Psychologist, SOCTP, BRIAN MCALLISTER,
Director, SOCTP, ANTHONY ANNUCCI, Commissioner,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Western District of New York
No. 22-cv-6469, Frank P. Geraci, Jr., *Judge*.

Before:     JACOBS, SULLIVAN, and NARDINI, *Circuit Judges*.

Sanjay Tripathy, a former inmate in the New York correctional system, appeals a judgment of the district court (Geraci, *J.*) dismissing his claims against state prison officials alleging that they (1) compelled him to enroll in a sex-offender program that required him to accept responsibility for his crimes in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the

First Amendment, (2) assigned him to a more intensive tier of that program in violation of his due process rights, and (3) retaliated against him after he challenged the sex-offender program by filing grievances and this lawsuit. We agree with the district court that Tripathy's claim for damages under RLUIPA is barred by our precedent holding that the statute does not permit individual-capacity damages; we likewise agree that his demands for injunctive and declaratory relief became moot when his state convictions were vacated and he was released from prison. With respect to his constitutional claims brought pursuant to 42 U.S.C. § 1983, the district court properly concluded that Tripathy's free exercise claim under the First Amendment is barred by qualified immunity, that he lacks standing to seek damages for his due process claim under the Fourteenth Amendment, and that he fails to state a claim for retaliation in violation of the First Amendment. Tripathy abandoned his remaining claims by failing to adequately raise them in his opening brief. We therefore **AFFIRM** the judgment of the district court.

AFFIRMED.

SARAH M. STERNLIEB, Weil, Gotshal & Manges LLP, New York, NY, *for Plaintiff-Appellant*.

SARAH L. ROSENBLUTH, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General of the State of New York, Albany, NY, *for Defendants-Appellees*.

RICHARD J. SULLIVAN, *Circuit Judge*:

Sanjay Tripathy, a former inmate in the New York correctional system, appeals a judgment of the district court (Geraci, *J.*) dismissing his claims against state prison officials alleging that they (1) compelled him to enroll in a sex-offender

2

program that required him to accept responsibility for his crimes in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the First Amendment, (2) assigned him to a more intensive tier of that program in violation of his due process rights, and (3) retaliated against him after he challenged the sex-offender program by filing grievances and this lawsuit. We agree with the district court that Tripathy's claim for damages under RLUIPA is barred by our precedent holding that the statute does not permit individual-capacity damages; we likewise agree that his demands for injunctive and declaratory relief became moot when his state convictions were vacated and he was released from prison. With respect to his constitutional claims brought pursuant to 42 U.S.C. § 1983, the district court properly concluded that Tripathy's free exercise claim under the First Amendment is barred by qualified immunity, that he lacks standing to seek damages for his due process claim under the Fourteenth Amendment, and that he fails to state a claim for retaliation in violation of the First Amendment. Tripathy abandoned his remaining claims by failing to adequately raise them in his opening brief. We therefore **AFFIRM** the judgment of the district court.

3

## I.   BACKGROUND

### A.  Facts

In May 2018, a New York state court jury found Tripathy guilty of a criminal sexual act in the first degree, sexual abuse in the first degree, and related offenses.[1] He was sentenced to a term of seven years' imprisonment, part of which he served at Collins Correctional Facility ("Collins").  While incarcerated there, Tripathy was assigned to the Sex Offender Counseling Treatment Program ("SOCTP").  Inmates who successfully complete this program receive good time credits and, upon their release, become eligible for lighter parole and registration requirements applicable to sex offenders under New York law.  Participants are assigned to one of three SOCTP levels based on a risk-scoring system administered by the program's directors.

Tripathy asserts that he received a risk score of "1," which should have placed him in the low-risk tier of SOCTP.  However, that placement was "overridde[n]" by Dr. Ryan Brotz – the lead SOCTP psychologist at Collins – who instead placed Tripathy in the moderate-risk program.  J. App'x at 68 (explaining that Dr. Brotz recommended moderate-risk placement due to the "extreme

---

[1] These facts are drawn from Tripathy's complaint and are accepted as true for the purposes of this opinion.  *See Clark v. Hanley*, 89 F.4th 78, 84 n.4 (2d Cir. 2023).

violence" involved in Tripathy's offense). Moderate-risk SOCTP was twice as long as the low-risk level – up to twelve months as opposed to six – and, as Tripathy argues in his brief, carried the potential for harsher parole and registration conditions down the line. And unlike participants in the low-risk program, those assigned to moderate-risk SOCTP were required to "accept responsibility for [their] sexually offending behavior" as part of their counseling. *See id.* at 61, 67, 73 (alleging that only the moderate-risk program entailed "Level 2" curriculum, which required acceptance of responsibility). A devout Hindu, Tripathy objected to this requirement on religious grounds, arguing that he was innocent of the crimes for which he was convicted and that accepting responsibility for his crimes would require him to make a false statement, in violation of the "core" Hindu "tenet[]" against lying. *Id.* at 65.

In light of these concerns, Tripathy filed grievances challenging both his enrollment in moderate-risk SOCTP and its requirement that he accept responsibility for his crimes. Prison officials thereafter subjected him to a "system[at]ic pattern of retaliation, harassment, and retribution," which Tripathy attributes to his complaints over SOCTP. *Id.* at 76. In particular, Tripathy asserts that he was disciplined for petty infractions (such as calling a staff member by her

first name and assisting another inmate with legal research), that his cell was searched unnecessarily, and that he was moved to a different cell block without explanation. *Id.* at 77–78.

## B. Procedural History

Proceeding *pro se*, Tripathy brought suit against several prison officials ("Defendants") under various federal constitutional and statutory provisions. His operative complaint alleged that subjecting him to moderate-risk SOCTP was a violation of his free exercise and due process rights under the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, as well as the statutory protections secured by RLUIPA, 42 U.S.C. § 2000cc.[2] Tripathy also alleged under section 1983 that Defendants retaliated against him in violation of the First Amendment after he sought to challenge his placement in SOCTP by filing grievances, and that the retaliation continued after he filed his original complaint in federal court. Finally, he included claims for conspiracy under 42 U.S.C. §§ 1983 and 1985, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c), and the

---

[2] Tripathy filed suit in the Southern District of New York, but the case was transferred to the Western District of New York, where Collins is located. Tripathy also amended his original complaint in May 2022 to assert First Amendment retaliation claims and to add Dr. Brotz as a defendant.

False Claims Act ("FCA"), 31 U.S.C. § 3730.[3] Tripathy sought both injunctive and declaratory relief as well as money damages.

Defendants moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The district court granted that motion, and this appeal followed. Although Tripathy filed his appellate briefs *pro se*, he retained counsel in advance of oral argument.

## C. Tripathy's Release

While Tripathy was incarcerated – and while this litigation was pending in the district court – he pursued postconviction relief in state court on his underlying convictions. In November 2022, the New York Supreme Court vacated Tripathy's convictions based on the ineffective assistance of his trial counsel. *See* Tripathy Br. at 62, 64. He was released on his own recognizance, although state prosecutors indicated they might seek to retry him. Tripathy ultimately struck a deal whereby he pleaded guilty to assault in the second degree and served one day of imprisonment (in light of the four years he served under his since-vacated original convictions).

---

[3] Although the district court construed these claims as being brought under the New York False Claims Act, Tripathy's complaint expressly states that he asserted them under the federal FCA. *See* J. App'x at 56 (citing FCA, 31 U.S.C. § 3730).

## II. DISCUSSION

We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See VIZIO, Inc. v. Klee*, 886 F.3d 249, 255 (2d Cir. 2018). We accept as true all well-pleaded factual allegations, draw all reasonable inferences in the plaintiff's favor, and assess the complaint to determine whether those allegations plausibly establish entitlement to relief. *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009).

### A. Declaratory and Injunctive Relief

We agree with the district court that Tripathy's requests for declaratory and injunctive relief – which he sought in connection with each of his claims – were mooted by his release from prison. A person's "transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006), *abrogated on other grounds as recognized by Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023). And while we have recognized an exception where there exists a "demonstrated probability" that the challenged conduct will reoccur, *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 396 (2d Cir. 2022) (internal quotation marks omitted), Tripathy cannot make that showing here. His initial convictions were vacated, and he has already served the one-day sentence imposed following his subsequent plea to assault in

8

the second degree. With his sentence fully discharged, there is no real likelihood that Tripathy will be subjected to SOCTP programming (or anything like it) any time soon. Lacking any basis to seek equitable relief, Tripathy can seek only monetary relief in connection with his claims for past violations.

## B. RLUIPA

Tripathy brought several claims for money damages, chief among them his claim under RLUIPA – a Spending Clause statute that authorizes certain plaintiffs to sue state officers who "substantial[ly] burden" their free exercise of religion. 42 U.S.C. §§ 2000cc-1(a), 2000cc-2(a) (authorizing such suits when officers burden the religious exercise of institutionalized or incarcerated persons); *id.* §§ 2000cc(a)(1), 2000cc-2(a) (same for officers who burden religious exercise through land-use regulations). Tripathy contends that RLUIPA permits him to recover damages against Defendants in their *individual* capacities because they imposed a substantial burden on his Hindu faith by forcing him to lie as part of SOCTP.

Tripathy's argument runs headlong into our decision in *Washington v. Gonyea*, which held that "RLUIPA does not provide a cause of action against state officials in their individual capacities" for money damages. 731 F.3d 143, 145 (2d Cir. 2013). Because a published panel decision is generally binding on future panels unless and until it is overruled, Tripathy's only hope is to argue that *Gonyea*

9

was abrogated by an intervening decision of the Supreme Court or our Court sitting *en banc*. *See In re Zarnel*, 619 F.3d 156, 168 (2d Cir. 2010). To that end, Tripathy points to *Tanzin v. Tanvir*, in which the Supreme Court held that the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.* – RLUIPA's sister statute – authorizes individual-capacity suits for money damages against federal officials. 592 U.S. 43, 52 (2020). On Tripathy's read, *Tanzin* abrogated *Gonyea* and compels the conclusion that RLUIPA likewise authorizes individual-capacity damages, given that both RFRA and RLUIPA authorize "appropriate relief" against officers who substantially burden a plaintiff's religious rights. 42 U.S.C. §§ 2000cc-2(a), 2000bb-1(c).

We are not persuaded that *Tanzin* abrogated *Gonyea*, for the simple reason that RFRA and RLUIPA were enacted pursuant to different constitutional provisions. For a Supreme Court decision to abrogate one of our precedents, "there must be a conflict, incompatibility, or inconsistency" between the intervening decision and our precedent. *United States v. Afriyie*, 27 F.4th 161, 168 (2d Cir. 2022) (internal quotation marks omitted). Here, there is no such conflict between permitting individual damages under RFRA (as in *Tanzin*) on the one hand, and barring them under RLUIPA (as in *Gonyea*) on the other. In fact, we

10

addressed this very issue in *Tanvir v. Tanzin* – our panel decision that the Supreme

Court affirmed in *Tanzin*. 894 F.3d 449, 465 (2d Cir. 2018), *aff'd*, *Tanzin*, 592 U.S. at

43. There, we held that permitting individual-capacity damages under RFRA

"does not conflict with our decision in *Washington v. Gonyea*." *Id.* As we went on

to explain, RFRA and RLUIPA do not offer identical damages remedies because

they were enacted under different "constitutional bas[e]s." *Id.* RLUIPA was

enacted pursuant to the Spending Clause, which means that, like a contract,

RLUIPA can impose "individual liability . . . only on those parties actually

receiving state funds." *Id.* (quoting *Gonyea*, 731 F.3d at 145). Because RLUIPA

funds are disbursed to the "state prison," and not its officials, those officials are

not "contracting part[ies]" and thus cannot be held liable for violating the

conditions – *i.e.*, RLUIPA's provisions – that attach to the funds. *Id.* at 465–66.

By contrast, RFRA is not Spending Clause legislation and has no such limits

on who may be sued for violating its provisions. *See Burwell v. Hobby Lobby Stores*,

*Inc.*, 573 U.S. 682, 695 (2014) ("As applied to a federal agency, RFRA is based on

the enumerated power that supports the particular agency's work."). Put

differently, RFRA does not "implicate the same concerns" about nonrecipient

liability as RLUIPA, since RFRA operates like a normal statute – not a contract –

11

and can impose liability on whoever violates its provisions. *Tanvir*, 894 F.3d at 466 (internal quotation marks omitted). It is therefore "entirely consistent" for RFRA to permit the recovery of individual-capacity damages from federal officials while RLUIPA bars the same from those who serve a state. *Id.*

Against this backdrop, Tripathy maintains that our Spending Clause analysis in *Gonyea* and *Tanvir* was flawed because we overlooked the Supreme Court's prior decision in *Sabri v. United States*, 541 U.S. 600 (2004). In that case, the Supreme Court reviewed the criminal conviction of a real estate developer who was convicted of federal funds bribery in violation of 18 U.S.C. § 666(a)(2), another Spending Clause statute that makes it a crime to bribe any organization that receives federal funds. *See id.* at 602–04. The defendant argued that this provision was constitutionally overbroad because it criminalized *all* bribes to a federally funded organization, even if the specific bribe did not influence the spending of the federal funds. *See id.* at 603–04. The Supreme Court rejected that challenge and upheld the federal funds bribery statute as a lawful exercise of Congress's spending power which, pursuant to the Necessary and Proper Clause, inherently includes the ability to ensure that congressional grants are not diverted through bribery and graft. *See id.* at 605.

According to Tripathy, *Sabri* proves that Congress can impose Spending Clause liability on nonrecipients, since the individuals paying bribes are not the ones who receive the federal funds. But *Sabri* is easily distinguishable from this case: unlike RLUIPA, the federal funds bribery provision does not impose the *conditions* of the federal funds on nonrecipients. The Spending Clause gives Congress the power to offer conditional funding to state and private actors, which necessarily includes the power to ensure that others do not interfere with the disbursement of those funds. *See id.* But it does not follow that Congress can impose the *conditions* attached to those funds on anyone it wishes. Because they operate like contracts, Spending Clause statutes can impose their conditions only on those who accept the funds, akin to a privity requirement. *See Tanvir*, 894 F.3d at 465–66.[4] So even though Congress can punish nonrecipients who attempt to

---

[4] To be clear, this requirement would still permit Spending Clause legislation to authorize *official-capacity* damages against officers even if it is the state that accepts the funds, since in such cases the suit is effectively against the state itself. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Nor do we mean to suggest that nonrecipients of federal funding may never face liability under Spending Clause statutes. As with third parties to contracts, there may be scenarios in which nonrecipients become bound by Spending Clause conditions "according to ordinary principles of contract and agency" that authorize enforcement of contracts against third parties. *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995) ("[W]e have recognized five theories for binding nonsignatories to [a contract]: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel."). But Tripathy does not argue, and the record does not reflect, that the individual defendants took acts that could so bind them, so we need not address the existence or scope of this potential exception.

siphon away federal dollars, it cannot bind nonrecipients to the conditions attached to those funds. We therefore see no conflict between *Sabri* and *Gonyea*'s holding that RLUIPA cannot impose its conditions on nonrecipient state officers in their individual capacities.[5]

In sum, we already determined in *Tanvir* that there is no "conflict" between the holdings of *Gonyea* (barring individual-capacity damages under RLUIPA) and *Tanzin* (authorizing individual-capacity damages under RFRA). *Id.* at 465. Nor is there any reason to find that *Gonyea* ran afoul of antecedent Supreme Court precedent like *Sabri*. Accordingly, under our prior panel rule, we remain bound by *Gonyea*'s holding that RLUIPA does not permit individual-capacity damages against state officers. *See Afriyie*, 27 F.4th at 168. The district court therefore properly dismissed Tripathy's damages claim under RLUIPA.[6]

---

[5] At least three of our sister Circuits have reached the same conclusion. *See Sharp v. Johnson*, 669 F.3d 144, 155 n.15 (3d Cir. 2012); *Wood v. Yordy*, 753 F.3d 899, 903–04 (9th Cir. 2014); *Landor v. La. Dep't of Corr. & Pub. Safety*, 82 F.4th 337, 344–45 (5th Cir. 2023). *But see Landor v. La. Dep't of Corr. & Pub. Safety*, 93 F.4th 259, 263–67 (5th Cir. 2024) (Oldham, *J.*, dissenting from denial of rehearing *en banc*) (arguing that RLUIPA can impose liability on nonrecipients).

[6] Tripathy also argues that he brought his RLUIPA claims under a particular subsection of the statute that was enacted pursuant to the Commerce Clause as opposed to the Spending Clause. Tripathy Br. at 38 (citing 42 U.S.C. § 2000cc-1(b)). In theory, such a claim could seek individual-capacity damages against nonrecipients, given that this subsection was not enacted pursuant to the Spending Clause. Still, this special provision applies only to claims of substantial religious burden that "affect[] . . . commerce with foreign nations [and] among the several states." 42 U.S.C. § 2000cc-1(b); *see also Gonyea*, 731 F.3d at 146 (finding that plaintiff "has pled no facts

14

## C. Free Exercise

Tripathy also urges us to revive the religious freedom claim he brought under section 1983, which alleged that his "mandatory" enrollment and compelled acceptance of responsibility in SOCTP violated his First Amendment right to free exercise. J. App'x at 61. The district court dismissed this claim as barred by qualified immunity, finding that SOCTP's requirement that participants accept responsibility for their misconduct did not violate clearly established law. We agree.

As a threshold matter, the district court properly concluded that Tripathy's claims for equitable relief and official-capacity damages are barred. As already discussed, Tripathy's equitable claims were mooted by his release from prison. *See Salahuddin*, 467 F.3d at 272. And his request for damages against Defendants in their official capacities is barred by the Eleventh Amendment. *See Davis v. New York*, 316 F.3d 93, 101–02 (2d Cir. 2002). Tripathy therefore may seek only individual-capacity damages against Defendants, which implicates the doctrine of

---

indicating that the restriction of his religious rights had any effect on interstate or foreign commerce"). And while Tripathy alleged that his *incarceration* imposed financial costs on out-of-state and foreign family members, he nowhere alleged that SOCTP itself led to those costs. He therefore has not stated a RLUIPA claim under this provision either.

qualified immunity. *See Jackler v. Byrne*, 658 F.3d 225, 244 (2d Cir. 2011) (explaining that this defense is available when officers are sued in their individual capacities).

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks omitted). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (alterations and internal quotation marks omitted). "In making this determination, we consider Supreme Court and Second Circuit precedent as it existed at the time of the challenged conduct." *McGowan v. United States*, 825 F.3d 118, 124 (2d Cir. 2016). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Even accepting Tripathy's allegations as true, we cannot agree that Defendants violated his clearly established rights by enrolling him in SOCTP. To our knowledge, no binding precedent establishes that a generally applicable program violates the Free Exercise Clause by requiring an inmate who is an

16

incarcerated felon to accept responsibility for the conduct underlying his conviction. In fact, the only appellate authority we are aware of that addresses this type of challenge (1) is not binding and (2) concluded that such acceptance-of-responsibility programs did *not* violate an inmate's religious freedom. *See Searcy v. Simmons*, 299 F.3d 1220, 1228 (10th Cir. 2002). Other decisions of the Supreme Court and our sister Circuits have similarly upheld these programs against challenges premised on other constitutional rights, such as due process and free speech. *See McKune v. Lile*, 536 U.S. 24, 29 (2002) (rejecting claim based on Fifth Amendment right against self-incrimination); *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010) (rejecting claim based on First Amendment right to free speech). Because Tripathy does not offer, and we are not aware of, any authority for the proposition that Defendants violated his clearly established rights by enrolling him in SOCTP, we affirm the district court's decision dismissing his First Amendment claims as barred by qualified immunity.

**D. Due Process**

Tripathy also challenges the dismissal of his Fourteenth Amendment due process claim, brought pursuant to section 1983, which alleged that Defendants improperly placed him in the moderate-risk SOCTP tier instead of the low-risk program. J. App'x at 67–68. The district court dismissed this claim, concluding

17

that Tripathy could not assert a procedural due process violation because his SOCTP placement did not implicate a cognizable liberty interest. We affirm that dismissal, but do so on a different ground – namely, that Tripathy lacks standing to sue for any alleged procedural due process violation tied to his SOCTP placement.

"We are required to address a standing issue even if the court below has not passed on it." *Thompson v. County of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994) (alterations and internal quotation marks omitted). As plaintiff, Tripathy bears the burden of establishing Article III standing by showing three elements: (1) "that he suffered an injury in fact," (2) "that the injury was likely caused by the defendant," and (3) "that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). And Tripathy must show that these elements are met "at all stages of [the] litigation" and that he has standing "for each claim that [he] press[es] and for each form of relief that [he] seek[s] (for example, injunctive relief and damages)." *Id.* at 431.

Applying this framework, we conclude that Tripathy lacks standing to sue for damages because his enrollment in moderate SOCTP programming subjected him to only a "mere *risk* of future harm," which cannot by itself support a damages

claim. *Id.* at 436 (emphasis added) (explaining that a risk of future harm is insufficient unless it "materializes" into a "*separate* concrete harm"). Here, Tripathy argues that his placement in moderate-risk SOCTP exposed him to a greater risk of future consequences, given that New York state law imposes "more onerous sex-offender registration requirements . . . [and] more onerous parole conditions" on higher-risk offenders. Tripathy Br. at 55. Because those injuries were nothing more than a "future risk of harm," Tripathy lacks standing to seek damages for any due process violation.[7]

## E. Retaliation

Tripathy's complaint also alleged that, after he filed this lawsuit, Defendants retaliated against him in various ways in violation of the First Amendment. The district court analyzed each of the six allegedly retaliatory incidents and concluded that none was sufficient to state a claim. On appeal, Tripathy does not challenge the district court's analysis of any of the six retaliatory incidents and instead

---

[7] Tripathy also asserted a substantive due process claim based on his SOCTP assignment, again maintaining that his placement in the moderate-risk program burdened his religious beliefs by requiring him to falsely accept responsibility for conduct he did not commit. But "where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (internal quotation marks omitted). Consequently, we must analyze Tripathy's claim of religious burden under the First Amendment, which we already did and rejected based on qualified immunity.

19

argues that the district court erred in failing to treat those incidents as a "systematic pattern" of retaliation. *Id.* at 57.

Even construing Tripathy's argument liberally, we cannot agree that his complaint stated a retaliatory pattern claim. To be sure, "[o]ur precedent allows a combination of seemingly minor incidents to form the basis of a constitutional retaliation claim once they reach a critical mass." *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002) (acknowledging pattern retaliation claims for public employees who allege that their employer created a hostile work environment in retaliation for protected conduct). "But incidents that are relatively minor and infrequent will not meet th[at] standard," which instead requires retaliatory conduct so severe that it manifests as a "pattern of nearly constant harassment." *Deters v. Lafuente*, 368 F.3d 185, 189 (2d Cir. 2004) (alterations and internal quotation marks omitted). Tripathy's allegations do not rise to that level. All told, Tripathy points to intermittent incidents in which he received counseling notifications or disciplinary infractions that resulted in no punishment, along with an occasion when his cell was searched and another when he was moved to a different dorm. *See* J. App'x at 41–46. Whether viewed in isolation or in tandem, these incidents fall short of the "pattern of nearly constant harassment" required to bring a

retaliatory pattern claim of this type. *Deters*, 368 F.3d at 189 (internal quotation marks omitted).

## F. RICO, Equal Protection, Conspiracy, and FCA

Tripathy's complaint also asserted claims for racketeering under RICO, religious discrimination under the Equal Protection Clause of the Fourteenth Amendment, conspiracy under 42 U.S.C. §§ 1983 and 1985(3), and the submission of false claims under the FCA. Tripathy abandoned these claims, however, by failing to adequately present arguments challenging their dismissal in his opening appellate brief. Although we construe *pro se* filings liberally, "we need not manufacture claims of error for an appellant proceeding *pro se*." *LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir. 1995); *see Gerstenbluth v. Credit Suisse Sec. (USA) LLC*, 728 F.3d 139, 142 n.4 (2d Cir. 2013) (explaining that a *pro se* litigant forfeited challenge to district court's ruling that was mentioned "obliquely and in passing").[8] "[I]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed

---

[8] We have not yet decided whether we continue to "liberally construe" *pro se* filings when, as here, a *pro se* plaintiff later retains counsel. *Nicholas v. Bratton*, 15-cv-9592 (JPO), 2019 WL 2223407, at *3 (S.D.N.Y. May 23, 2019) (collecting in-circuit district court cases). Because Tripathy abandoned these claims even under the generous *pro se* standard, we assume without deciding that his *pro se* filings continue to receive a liberal construction.

21

[forfeited]." *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) (internal quotation marks omitted).  It is likewise settled that an appellant forfeits any argument not raised in his opening brief.  *See JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005).  Tripathy either failed to mention these claims in his opening brief or mentioned them only in passing; he thus failed to articulate any specific reasons as to why the district court erred in dismissing them.  *See Schlosser v. Kwak*, 16 F.4th 1078, 1080 n.1 (2d Cir. 2021) ("A vague sentence fragment that notes an issue without advancing an argument relating to that issue is ordinarily not sufficient to preserve an argument on appeal.").  For this reason, we conclude that Tripathy abandoned any challenge to the dismissal of these claims.

## III.  CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment of the district court. We also **DENY** Tripathy's motion to reverse and remand as moot.